# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

JOE PASZKOWSKI,

    Plaintiff,

    v.

ROXBURY TOWNSHIP POLICE DEPARTMENT, et al.,

    Defendants.

Civil Case No. 13-7088 (FSH)

**OPINION & ORDER**

Date: January 30, 2014

**HOCHBERG, District Judge:**

This matter comes before the Court upon Defendants' motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Defendants argue that the individual defendants are entitled to the defense of qualified immunity and that Plaintiff has failed to properly plead a claim against the Roxbury Township Police Department under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). The Court has reviewed the submissions of the parties and considers the motion pursuant to Federal Rule of Civil Procedure 78.

**I.     BACKGROUND[1]**

On April 29, 2013, Officer John Sylvester executed and issued Complaint-Warrant 2013-244. In that warrant, Officer Sylvester alleged that Joe Paszkowski ("Paszkowski" or "Plaintiff") did "knowingly and purposely threaten to kill another, specifically by hanging them," in

---

[1] These facts are taken from Plaintiff's First Amended Complaint (Dkt. No. 2), unless otherwise noted.

violation of N.J.S.A. 2C:12-3b, terroristic threats, a third degree crime, by leaving a voicemail on a telephone answering system.[2]

The gravamen of Plaintiff's complaint is that before Officer Sylvester executed and issued the warrant against Plaintiff, he listened to the entire recorded voicemail but only disclosed a portion of the voicemail in his complaint-warrant, his April 30, 2013 Investigation Report, and his May 13, 2013 Supplementary Investigation Report.[3] According to Plaintiff's Amended Complaint, the entire recorded message stated:

> I heard Nick is dead, that he committed suicide. I'm going to hang both of you . . . so bad. I'm coming up to New Jersey. I'm leaving tomorrow morning and I'm going to . . . have a prosecutor look into the case for what you did to . . . Nick. You two . . . are going to be both in jail.

---

[2] N.J.S.A. 2C:12-3b, captioned "Terroristic threats," states:

> A person is guilty of a crime of the third degree if he threatens to kill another with the purpose to put him in imminent fear of death under circumstances reasonably causing the victim to believe the immediacy of the threat and the likelihood that it will be carried out.

[3] Defendant Sylvester's Investigation Report, specifically referenced and relied upon in Plaintiff's Amended Complaint, also indicates that he met with the victim on April 29, 2013. The victim noted that she had been receiving threatening voicemails from her father and that she feared for her life. (Dkt. No. 5-3.) The victim also stated that Plaintiff had also called her mother and cousin and told them he was going to kill her. (*Id*.) The victim stated that in a prior voicemail the Plaintiff stated that "if she . . . does not unblock my number . . . I am coming to town to kill her. I don't care about going to jail." (*Id*.) The same report indicates that the victim stated that Plaintiff blamed her for separating from her late husband (the man referenced in Plaintiff's voicemail). (*Id*.) The victim also indicated that Plaintiff owned at least four guns. (*Id*.) The victim indicated that she was in fear of her life and advised that Plaintiff was unstable. (*Id*.) Thereafter, Defendant Sylvester contacted Assistant Prosecutors Lisa Scorcolini and Tia Manochio of the Morris County Prosecutor's Office. (*Id*.) After realizing that Plaintiff would be arrested, the victim told Defendant Sylvester that she did not want to pursue criminal charges. (*Id*.)

(Dkt. No. 2, ¶ 4.)[4]  According to the complaint, the complaint-warrant excluded portions of the message that "clearly negate any threat to kill another by hanging." (*Id.*, ¶ 5.)  The warrant was reviewed and approved by Lieutenant Timothy Driscoll.  Municipal Court Judge Carl Wronko signed the warrant.[5]

On May 8, 2013, members of the Pennsylvania State Police arrested Plaintiff at his home and incarcerated him in the Warren County, Pennsylvania jail pending extradition to New Jersey. While incarcerated, Plaintiff suffered an angioedema attack, supraglottic edema, and respiratory distress.  As a result, Plaintiff was hospitalized.  On August 2, 2013, the Morris County Prosecutor's Office presented the criminal charge to the Morris County Grand Jury, which returned a no bill.

Plaintiff also alleges that the Roxbury Township Police Department negligently hired the individual defendants, failed to properly train and supervise the individual defendants, and failed to provide appropriate safeguards to prevent the alleged unlawful conduct.  Plaintiff alleges that as a result of these events, he was subject to unlawful arrest and seizure in violation of the Fourth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. § 1983, and the laws and Constitution of the State of New Jersey.

---

[4] According to Plaintiff's opposition papers, the full transcript of the voicemail states:

> I heard Nick is dead, that he committed suicide.  I'm going to hang both of you fuckers so bad. I'm coming up to New Jersey.  I'm leaving tomorrow morning and I'm going to fucking have a prosecutor look into this case for what you did to fucking Nick.  You two mother fuckers are going to be both in jail.

(Dkt. No. 8 at 1.)  There are no material differences between Plaintiff's and Defendants' version of the voicemail.  (*Compare* Dkt. No. 8 at 1 *with* Dkt. No. 5-4.)

[5] Judge Wronko spoke with Defendant Sylvester and the victim prior to signing the warrant. (Dkt. No. 5-3.)

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted).

When considering a motion to dismiss under *Iqbal*, the Court must conduct a two-part analysis. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal quotations and alterations omitted).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a 'document *integral to or explicitly* relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *In re Burlington Coat*

*Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citations omitted) (emphasis in original).[6]

### III. DISCUSSION

Defendants argue that the individual defendants are entitled to the defense of qualified immunity.

#### a. The Qualified Immunity Defense

"The Supreme Court has repeatedly stressed the importance of resolving [qualified] immunity questions at the earliest possible stage of the litigation. Thus, district courts should move expeditiously to weed out suits . . . without requiring a defendant who rightly claims qualified immunity to engage in expensive and time-consuming preparation to defend the suit on the merits. Qualified immunity is not merely a defense, but also an entitlement not to stand trial or face the other burdens of litigation." *George v. Rehiel*, 738 F.3d 562, 571 (3d Cir. 2013) (internal citations and quotation marks omitted).

"Qualified immunity shields government officials from personal liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. The doctrine is intended to mitigate the social costs of exposing government officials to personal liability by giving officials breathing room to make reasonable but mistaken judgments about open legal questions. Properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Id*. at 571-72 (internal citations and quotation marks omitted). "Determining whether a right alleged to have been violated is so clearly established that any reasonable officer would have known of it must

---

[6] The Court relies on the Complaint-Warrant, the April 30, 2013 Investigation Report, and the transcripts of the voicemail attached to Defendants' motion to dismiss and Plaintiff's opposition as they are all either integral to or explicitly relied upon in the Amended Complaint.

be undertaken in light of the specific context of the case, not as a broad general proposition. In order for the official to lose the protections of qualified immunity, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (internal citations and quotation marks omitted).

Therefore, in order to overcome the defense of qualified immunity, Plaintiff must allege facts that show the conduct of each defendant (1) violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). In other words, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal citations and quotation marks omitted); *see also Paff v. Kaltenbach*, 204 F.3d 425, 431 (3d Cir. 2000).

"[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner. The *Harlow* standard is specifically designed to avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment, and we believe it sufficiently serves this goal. Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

### b. Probable Cause

For Plaintiff to succeed on a § 1983 claim asserting that law enforcement agents submitted a false affidavit to the issuing judicial officer—whether the alleged falsehood is an affirmative misrepresentation or material omission—he must prove "(1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997). "[O]missions are made with reckless disregard if an officer withholds a fact in his ken that '[a]ny reasonable person would have known . . . was the kind of thing the judge would wish to know.'"[7] *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (citing *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)). "To determine the materiality of the misstatements and omissions, we excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." *Id.* at 789; *see also Badillo v. Stopko*, 519 F. App'x 100, 105 (3d Cir. 2013).

"The proper inquiry in a section 1983 claim based on false arrest or misuse of the criminal process is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988). "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's

---

[7] Here, Plaintiff only alleges that there were omissions when obtaining the warrant. Therefore, the Court need not address the test for assertions. *See Wilson*, 212 F.3d at 788 ("An assertion is made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'").

knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002). "A police officer may be liable for civil damages for an arrest if 'no reasonable competent officer' would conclude that probable cause exists." *Wilson*, 212 F.3d at 789-90.

### c. Analysis

The first step in analyzing qualified immunity is determining whether Defendant Sylvester "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant." *Sherwood*, 113 F.3d at 399. In other words, would a reasonable person have known that the omitted portions of the voicemail were the kind of thing the judge would wish to know? *Wilson*, 212 F.3d at 788. Under the facts pleaded in the Amended Complaint, no reasonable person could conclude that a judge would want to know that, in the remainder of the message, Plaintiff threatened to go to the prosecutor and send the victims to jail. Indeed, this portion of the message does nothing to contradict or cast doubt on Plaintiff's first threat—coming to New Jersey and hanging the victims. The remainder of the message merely includes further threats to the victims (*i.e.*, going to the prosecutor in an attempt to put the victims in jail).

Even if the Court were to find that a reasonable person would have known that the omissions were the kind of thing a judge would want to know, Plaintiff's complaint would still fail to state a claim because the omissions were not material. A corrected warrant affidavit—*i.e.*, one that included the full message rather than the truncated message—would still establish probable cause in this case. Defendant Sylvester knew that Plaintiff left a message for the victims where he threatened to come to New Jersey and hang them. Plaintiff's additional threat to go to the prosecutor in an attempt to get the victims arrested does not undermine the fact that

Plaintiff did leave the threatening message. The facts in the Amended Complaint fail to state a claim to relief that is plausible on its face because, even with the omission added, any reasonable police officer would have concluded that probable cause existed.[8] *See Wilson*, 212 F.3d at 789-90 (finding that in order to state a claim, a juror would have to conclude that "'no reasonabl[y] competent officer' would conclude that probable cause exists").

Plaintiff argues that Rule 3:3-2 of the Rules Governing the Courts of the State of New Jersey supports denying Defendants' motion. Rule 3:3-1(c)—Rule 3:3-2 was recently renumbered—states that a summons rather than an arrest warrant should be issued unless one of six situations exist. But failure to follow state-mandated procedure "does not constitute a *per se* violation of [a] plaintiff's constitutional rights. . . . [T]he failure to issue a complaint-summons rather than a complaint-warrant [does] not violate a right protected under the Civil Rights Act." *Sanducci v. City of Hoboken*, 315 N.J. Super. 475, 485 (App. Div. 1998) (internal citations omitted). On other hand, such a violation "must be considered in determining whether the police officers had probable cause or whether they reasonably believed that probable cause existed." *Connor v. Powell*, 162 N.J. 397, 411, 744 A.2d 1158, 1165 (2000). Under the Rules, an arrest warrant may be issued if "there is a reason to believe the defendant is dangerous to self, other persons, or property." N.J. R. C.R. R. 3:3-1(c). Because Plaintiff's message indicated he wanted

---

[8] Although not necessary for this Court's ruling, it is also notable that Defendant Sylvester conferred with both the magistrate judge and the prosecutor. (Dkt. No. 5-3.) Moreover, the prosecutor confirmed that the arrest warrant was valid. (*Id*.) Under these circumstances, there is a presumption that the officer is entitled to qualified immunity if his good faith reliance on the prosecutor's legal opinion was objectively reasonable. *Kelly v. Borough of Carlisle*, 622 F.3d 248, 255-56 (3d Cir. 2010). "[A] plaintiff may rebut this presumption by showing that, under all the factual and legal circumstances surrounding the arrest, a reasonable officer would not have relied on the prosecutor's advice." *Id*. Plaintiff has not rebutted that presumption in this case.

to hang the victim (*i.e.*, was a danger to the victim), Defendant Sylvester did not err in issuing an arrest warrant rather than a summons.

The Amended Complaint fails to plead facts that would establish that a Constitutional right was violated. Therefore, Plaintiff's Amended Complaint must be dismissed with respect to Defendant Sylvester. Plaintiff premises the Roxbury Township Police Department's and Defendant Driscoll's liability on the existence of a Constitutional violation by Defendant Sylvester. Because there is no Constitutional violation with respect to Defendant Sylvester, the claims against Defendant Driscoll and the Roxbury Township Police Department must also be dismissed. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

Finally, Plaintiff concedes that the Second Count of his First Amended Complaint against the Roxbury Police Department does not meet the § 1983 pleading standard required by *Iqbal*. (Dkt. No. 8 at 8-9.) Plaintiff's § 1983 claim against the Roxbury Police Department must be dismissed on this separate and independent ground.

### d. State Law Claims

Plaintiff's remaining claims are predicated on state law. Pursuant to 28 U.S.C. § 1367(c)(3), "[t]he district court may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." The Third Circuit has recognized the authority of district courts to decline to retain jurisdiction after the federal claims have been dismissed. *See*, *e.g.*, *Annulli v. Panikkar*, 200 F.3d 189, 202-03 (3d Cir. 1999) (affirming decision of the district court to decline to exercise pendent jurisdiction after granting summary judgment to the defendants on the claims arising under federal law), *abrogated on other grounds by Rotella v. Wood*, 528 U.S. 549 (2000); *Jackson v. Fauver*, 334 F. Supp. 2d 697, 737-38 (D.N.J. 2004). The Court, therefore, declines to exercise supplemental

jurisdiction over Plaintiff's remaining claims in light of the considerations of judicial economy, convenience, fairness, and comity. Plaintiff may choose to refile those claims in state court.

## IV. CONCLUSION & ORDER

For the reasons stated above,

**IT IS** on this 30th day of January, 2014,

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 5) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Amended Complaint is **DISMISSED**; and it is further

**ORDERED** that the Court declines to exercise jurisdiction over Plaintiff's remaining state law claims and those claims are **DISMISSED** without prejudice; and it is further

**ORDERED** that the Clerk of the Court is to **CLOSE** this case; and it is further

**ORDERED** that Plaintiff may seek permission to reopen this case within **30 days** of this Order should he be able to addresses the deficiencies discussed herein.

                                                          **/s/ Hon. Faith S. Hochberg\_\_\_\_**
                                                          Hon. Faith S. Hochberg, U.S.D.J.